IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ELINA ZAYCHICK                                    CASE NO.:  9:15-cv-80336-RLR

    Plaintiff,

vs.

BANK of AMERICA, N.A.,

    Defendants.
_____/

### PLAINTIFF ELINA ZAYCHICK'S RESPONSE IN OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS COMPLAINT

Plaintiff Elina Zaychick, by and through undersigned counsel, hereby serves her opposition to the Rule 12(b)(6) motion filed by Defendant Bank of America, N.A. (D.E. 13).  As we explain below, Bank of America fundamentally misunderstands both the claim that Plaintiff has raised in this action and the operative allegations of the Complaint. As a result, Bank of America's arguments in support of dismissal simply do not apply.

Plaintiff's claims in this case arise under the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C 2605(e).  Among other things, RESPA and its implementing Regulation X (12 C.F.R. part 1024) require mortgage servicers such as Bank of America to provide information that borrowers request in writing and that is related to the servicing of their loan. RESPA, and Regulation X also require mortgage servicers to provide certain information relating to loss mitigation[1] (even in the absence of any request by the borrower) whenever the servicer denies a loss mitigation application.  Because RESPA and Regulation X also require servicers to establish procedures permitting a borrower to appeal a denial of a loss mitigation

---

[1] "loss mitigation" refers to alternatives to foreclosure when borrowers default on their mortgage loans.

application, the disclosure requirements operate in harmony with the appeal provisions. The information that servicers are required to provide is also information that a borrower or a borrower's representative would need to evaluate whether the servicer has properly evaluated the application. Plaintiff's claims here arise from Bank of America's violation of these requirements.

In the case at bar, Bank of America failed to provide Plaintiff with the required information when it initially denied her loss mitigation application. After she invoked the separate provisions of RESPA and Regulation X entitling her to request information relating to the servicing of her loan, Bank of America once again failed to provide the required information. Bank of America's repeated failure to provide this legally required information represents a violation of its obligations under RESPA and Regulation X. Furthermore, Bank of America's unlawful omissions continue to deny Plaintiff her federal right to a substantive evaluation of her loss mitigation application and a meaningful appeal.

### I. REGARDLESS OF WHETHER THE PROMISSORY NOTE AND MORTGAGE MERGE WITH THE FINAL JUDGMENT UNDER STATE LAW, RESPA AND REGULATION X IMPOSE A FEDERAL REQUIREMENT UPON MORTGAGE SERVICERS REGARDING INFORMATION REQUESTS. THE CONSUMER FINANCIAL PROTECTION BUREAU'S OFFICIAL INTERPRETATIONS CLEARLY REFLECT THAT THIS REQUIREMENT CAN APPLY AFTER A STATE COURT JUDGMENT HAS BEEN ENTERED

Bank of America's, first argument in support of its Rule 12(b)(6) motion asserts that the promissory note was extinguished and merged into the judgment under state law. Thus, Bank of America asserts that this merger operates to relieve Bank of America of its obligation to respond to Plaintiff's Request for Information because that request was submitted after the judgment. Plaintiff takes no position concerning whether Bank of America's merger theory is a correct statement concerning state law. But even assuming Bank of America is correct, it simply

does not follow that Plaintiff would therefore be prevented from invoking the applicable provisions of RESPA and Regulation X relating to "Qualified Written Requests."[2] To the contrary, 12. C.F.R § 1024.36(f)(1)(v)(B) expressly permits the borrower to make a Request for Information up to one year after the mortgage loan is "discharged." The Consumer Financial Protection Bureau's (CFPB) official interpretations of Regulation X explain that a Borrower may invoke the RESPA/Regulation X provisions relating to "Qualified Written Requests"/"Requests for Information" up to one year after the loan is "discharged." The CFPB's official interpretations further explain that "discharge" occurs when there is no longer any lien or any debt arising from the mortgage transaction. Thus, discharge occurs sometime after the judgment. Moreover, even after discharge, the borrower may still make a "Qualified Written Request"/"Request for Information" up to one year later.

Here, Bank of America asserts that the foreclosure judgment was entered on March 28th, 2014. (D.E. 13, p.2 ¶.4). However, Bank of America acknowledges that Plaintiff's Request for Information was sent in November of 2014. (D.E. 13, p.3 ¶.7). Thus, even if the judgment were regarded as the point in time when the loan was discharged, the Request for Information was sent less than a year after the judgment and therefore less than one year after the "discharge." Plaintiff excerpts the relevant language from the CFPB's official interpretations on below:

> [t]he Bureau received comments from industry as well as consumer groups addressing the proposed modifications. Commenters were generally supportive of changing the rule to address situations when the loan is not paid in full, but expressed concerns about the use of the word "discharged," stating that this word has a specific meaning in bankruptcy and that there may be some ambiguity as to when a loan is discharged in certain situations. In particular, commenters discussed the foreclosure process, as well as situations in which there is a deficiency balance

---

[2] 12 C.F.R §1024.36(a) provides that a "Request for Information" is one type of "Qualified Written Request" covered by RESPA.

after a foreclosure sale, and situations in which bankruptcy proceedings may eliminate the debt but leave a lien on the property. The Bureau is adopting § 1024.35(g)(1)(iii)(B) and § 1024.36(f)(1)(v)(B) as proposed.

***

The Bureau believes the requirement to resolve errors and respond to information requests should last over the same timeframe as the obligation to retain records. The Bureau believes it would be impractical to require a servicer to resolve errors and provide information at a time when Regulation X no longer requires the servicer to retain the relevant records. Conversely, the Bureau believes the servicer should be responsible to correct those records during the period when Regulation X does require a servicer to retain records, if necessary, and provide borrowers information from the records. Further, the Bureau believes the use of the term "discharged" is appropriate, especially given that the term is already used in the timing of the record-retention requirement. For purposes of the Bureau's mortgage servicing rules, as opposed to bankruptcy purposes, a mortgage loan is discharged when both the debt and all corresponding liens have been extinguished or released, as applicable. The Bureau believes a borrower should have the benefit of the error resolution, information request, and record retention provisions so long as a debt *or* lien remains because only after both have been eliminated will there be no further possibility of a borrower needing to seek servicing information or to assert a servicing error. Thus, the Bureau is finalizing this provision as proposed.

(CFPB Final Rule Amending Certain Provisions Adopted on September 13th, 2013)(Emphasis in the original). Available at: http://files.consumerfinance.gov/f/201309_cfpb_titlexiv_updates.pdf (Last visited June 2nd, 2015).

As the 11th Circuit has explained, the Department of Housing and Urban Development had been granted congressional authority to promulgate implementing regulations under RESPA, and those regulations were entitled to deference. *Patton v. Triad Guarantee Ins. Corp.,* 277 F.3d 1294, 1299 (11th Cir. 2002). *Citing Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The 2010 Dodd/Frank Wall Street Reform

and Consumer Protection Act transferred authority over RESPA to the newly created CFPB. *See While v. PNC Financial Services Group Inc.,* 2014 WL 4063344 *2 n.14 (E.D. PA. August 15th ,2014)(Case No. 11-7928). Thus, the CFPB's interpretations of RESPA are now also entitled to deference. The CFPB's official interpretations plainly operate to permit Plaintiff to seek information relating to her loan within 12 months after the foreclosure judgment regardless of any merger doctrine existing under state law. Plaintiff submits that there is no inconsistency between the merger doctrine that Bank of America asserts exists under Florida law, and the RESPA/Regulation requirements relating to requests for information. But even if there were some inconsistency, RESPA is a federal law and it would prevail by operation of the U.S Constitution's Supremacy Clause.

Thus, Bank of America may well be correct that, under Florida law, the note and mortgage merge with the judgment. However, that simply doesn't matter. Under federal law, Plaintiff was free to invoke RESPA and Regulation X's provisions permitting her to request information relating to the servicing of her loan when she did so in November of 2014. Bank of America was not permitted to refuse to respond, and it violated RESPA when it did so.

## II.  CONTRARY TO BANK OF AMERICA's CHARACTERIZATION,  PLANITIFF'S COMPLAINT CAN ONLY REASONBLY BE READ AS ALLEGING THAT SHE SUBMITTED HER LOSS MITIGATION APPLICATION 37 DAYS BEFORE THE FORECLOSURE SALE

Bank of America next argues that Plaintiff's Complaint should be dismissed due to her asserted failure to "…aver that she submitted her loss mitigation application was submitted 37 days prior to the foreclosure sale." (D.E. 13, p.6). However, Bank of America misreads the Complaint. Of course, it is well settled that when considering a motion to dismiss, the Court must accept all facts alleged as true and draw all inferences in the light most favorable to the

non-moving party. *See E.g.  Franklin v. Minnesota Mutual Life Ins. Co.,* 97 F.Supp.2d 1324, 1326 (S.D. Fla. 2000) citing *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir.1994).

As Bank of America points out in its motion, Plaintiff alleges that the foreclosure sale took place on October 3rd 2014.  (D.E. 13, p. 6 citing D.E. 1 ¶. 9).   As Bank of America also points out in its Rule 12(b)(6) motion,  Plaintiff additionally alleges that "[o]n May 9, 2014, Bank of America advised Plaintiff that her loss mitigation application had been denied because she failed to "show a valid financial hardship…." (D.E. 13, p.2 ¶.5 citing D.E. 1 ¶.19). Obviously, May 9th 2014 occurred considerably more than 37 days before October 3rd, 2014.

Similarly, Bank of America complains that due to asserted pleading deficiencies "…it is not known what was mailed to Bank of America, when it was mailed, or even whether it was a complete application as required by Regulation X." (D.E. 13, p.6).  However, the allegation that Plaintiff's application was denied gives rise to the entire reasonable inference that it was complete. This is particularly true since 12 C.F.R. § 1024.41(2) would generally prohibit a servicer from evaluating a loss mitigation application *unless* it was complete.

### III.  BANK OF AMERICA'S ASSERTION THAT PLAINTIFF "NEVER AUTHORIZED BANK OF AMERICA TO PROVIDE ANY RESPONSE TO PLAINTIFF'S FORMER COUNSEL'S QWR"  IS BASED ENTIRELY UPON DISPUTED QUESTIONS OF FACT AND CANNOT BE APPRORIATELY CONSIDERED IN THE CONTEXT OF A RULE 12(B)(6) MOTION

Bank of America's third argument for dismissal is based upon its contention that due to "privacy concerns" Bank of America required written authorization from Plaintiff before it would release the requested information to the attorney that was representing Plaintiff at the time.[3] (D.E. 13, p.7-9).  Bank of America asserts that Plaintiff's Complaint is insufficient because "Plaintiff has not averred in her Complaint, nor provided documentary evidence, that

---

[3] The information request was executed by attorney Jose Pujol, who represented Plaintiff at the time. (D.E 1-2, p.2)

she authorized her former attorney to receive information regarding loss mitigation alternatives as requested." (D.E. 13, p.7).  But of course, providing the authorization that Bank of America refers to here is not an element of a RESPA claim.  Plaintiff was not required to anticipate that Bank of America would raise this factual defense and preemptively plead around it.

Furthermore, "[a] court's review on a motion to dismiss is 'limited to the four corners of the complaint.'" *Wilchombe v. TeeVee Toons Inc.*, 555 F.3d 949, 959 (11th Cir. 209)  citing. *St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir.2002). "A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Id.* citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997).

Plaintiff certainly does not allege that Bank of America requested authorization relating to Mr. Pujol, or that she failed to provide any requested authorization.  Furthermore, the plain language of 12 U.S.C. § 2605(e)(1)(a) expressly obligates servicers to respond to communications sent by a borrower's agent. Since Bank of America was aware that the individual who sent the Request for Information was an attorney representing Plaintiff in connection with the foreclosure litigation, it is doubtful that Bank of America had any legitimate reason to request further authorization. But even if it did, the only reasonable inference that can be drawn from the attachments to the Compliant is that either sufficient authorization was provided, or Bank of America ultimately became satisfied that Mr. Pujol was appropriately authorized to act on Plaintiff's behalf. In fact, the letter that Bank of America sent Plaintiff in response to the Request for Information is incorporated into the Complaint. (D.E. 1-4).  In that letter, Bank of America states that "[t]he remainder of your correspondence has been, or will be, addressed under separate cover." (D.E. 1-4).  Thus, Bank of America's own correspondence

strongly supports the reasonable inference that Bank of America recognized Mr. Pujol as being appropriately authorized to communicate with Bank of America on Plaintiff's behalf. At a minimum, it also casts serious doubt on defense counsel's representation that Bank of America's failure to respond was due to "privacy concerns." If Bank of America's repeated failures really were attributable to the asserted "privacy concerns", it makes no sense that Bank of America stated in writing that it intended to respond further. At most, any argument by Bank of America that its failure to appropriately respond was attributable to "privacy concerns", presents a question of fact for trial.

**IV.   WHILE BANK OF AMERICA IS CORRECT THAT IT WAS NOT REQUIRED TO OFFER PLANTIFF ANY SPECIFIC LOSS MITIGATION OPTION, THE PLAIN LANGUAGE OF REGULATION X REQUIRES IT TO PROVIDE HER WITH *INFORMATION* ABOUT LOSS MITIGATION OPTIONS THAT IT CLAIMS TO HAVE CONSIDERED**

Bank of America's fourth argument asserts that it was not obligated to provide Plaintiff with any specific loss mitigation option. While that is true, it is also irrelevant. Plaintiff's claims are not based upon Bank of America's denial of her loss mitigation application. Rather, her claims are based upon Bank of America's continued failure to provide her with *information* relating to the loss mitigation options that it purportedly considered in the context of her application. The plain language of Regulation X required Bank of America to provide this information.

Indeed, while Bank of America boldly proclaims that the requirement to disclose the loss mitigation programs it purportedly considered in connection with Plaintiff's application "is a fictitious, not legal, requirement that Plaintiff is trying to impose upon Bank of America" (D.E. 13 p.8), the plain language of Regulation X demonstrates that Bank of America is completely

mistaken. 12 C.F.R. § 1024.41 reflects this unambiguous requirements is hardly fictitious. The relevant text provides:

> (c) *Evaluation of loss mitigation applications*—(1) *Complete loss mitigation application.* If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall
>
> \*\*\*
>
> (i) Evaluate the borrower for all loss mitigation options available to the borrower; and
>
> \*\*\*
>
> (d) *Denial of loan modification options.* If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section<u>, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.</u> (Emphasis Added).

Similarly, both 12 U.S.C § 2605(e)(b)(ii) and 12. C.F.R. §1042.36(a) require servicers to provide information relating to the servicing of a mortgage loan upon the borrower's written request. Clearly then, Bank of America was obligated to provide the information that Plaintiff sought when it denied her loss mitigation application. It was also obligated to provide this information when she formally requested it through her Request for Information. Both times, Bank of America failed to comply with its unambiguous obligations under the federal statute and administrative regulation that governs its business activities. Remarkably, it now argues that this unambiguous requirement is "fictitious."

## V.  PLAINTIFF'S DAMAGES ALLEGATIONS SATISFY RULE 8'S REQUIREMENTS

Lastly, Bank of America seeks dismissal of Plaintiff's claims based upon her asserted failure to "allege either the nature or extent of the damages sought." (D.E. 13, p.10).  Although unclear, Bank of America appears to argue that a RESPA plaintiff faces a greater burden in pleading damages than Rule 8 uniformly imposes upon all other plaintiffs.  However, Bank of America wholly fails to cite any authority for the heightened pleading burden it asks the Court to impose. Similarly Bank of America offers no argument as to why Plaintiff's damage allegations do not satisfy Rule 8.

As Bank of America notes, Plaintiff identifies the costs she incurred in preparing and sending her requests for information and emotional distress as specific examples of damages that she seeks in this action. These damages are recoverable under RESPA.  Bank of America does not even appear to argue that they are not.

Notwithstanding Bank of America's novel heighted pleading argument, it is quite clear that RESPA plaintiffs are not subject to any sort of heightened pleading standard relating to damages.  In *Mellentine v. Ameriquest Mortgage*, 515 Fed.App'x 419, 425 (6th Cir. 2013) the 6th Circuit found that the Plaintiff's simple request for "damages in an amount not yet ascertained, to be proven at trial" were sufficient in a RESPA case.  Plaintiff's damages allegations here go well beyond those.

As Judge Cohn pointed out recently in *Burdick v. Bank of America* 2015 WL 1780982 *6 (S.D. Fla. April 14th, 2015) --- F.3d--- "a plaintiff need not specify his damages in detail, so long as his prayer for relief fairly encompasses the damages sought." Citing *Newton v. Palm Coast Recovery Corp.,* No. 13–62051–CIV–COHN, 2014 WL 293484, at *3 (S.D.Fla. Jan.27, 2014); *Levine v. World Fin. Network Nat'l Bank,* 437 F.3d 1118, 1123–24 (11th Cir.2006).  Like the

case at bar, *Burdick* also involved a RESPA claim, and Judge Cohn found similar allegations as those presented here to be sufficient.

Furthermore, unlike Florida law, federal law contains no "impact rule" concerning emotional distress damages. Instead, emotional distress damages are construed very broadly, and can be proven at trial by the plaintiff's own testimony. See *McLean v. GMAC Mortgage Corp.,* 398 F.App'x 467, 471 (11th Cir. 2010). Furthermore, in *McCollough v. Johnson, Rodenburg, and Lauinger,* 637 F.3d 939 (9th Cir. 2011), the 9th Circuit upheld a $250,000 verdict based upon emotional distress damages under the Fair Debt Collection Practices Act.[4] In that decision, the 9th Circuit approved a jury instruction describing actual damages as follows:

> [a]ctual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish or emotional distress. Mental and emotional suffering and distress pass under various names such as mental anguish, nervous shock and the like. It includes all highly unpleasant mental reactions such as fright or grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation for mental and emotional suffering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law.
>
> The law does require, however, that when making an award for mental and emotional suffering and distress you should exercise calm and reasonable judgment. The compensation must be just and reasonable.

*Id.* at 957.

Thus, under federal law, emotional distress damages are available to compensate those who have been injured in intangible ways by violations of federal consumer protection statutes. Here, Plaintiff's injuries are significant. At a minimum, it can be reasonably inferred that she

---

[4] Former Supreme Court Justice Sandra Day O'Conner sat on that panel by designation.

would experience "unpleasant emotional reactions" arising from Bank of America's continuing and prolonged failure to give her a straight answer as to why her loss mitigation application was denied in compliance with its obligations under RESPA and Regulation X.

Moreover, both *Justice v. Ocwen Loan Servicing*, 2015 WL 235738(Case No. 2:13-cv-165)(S.D. Ohio January 16th, 2015) and *Marais v. Chase Home Finance LLC.*, 24 F.Supp.3d 712, 727-728) (S.D. Ohio) contain detailed analysis as to why the costs associated with sending a Qualified Written Request become damages when the servicer fails to respond.  Simply put, if the servicer appropriately responds, the costs associated with the request are merely a transaction cost.  But when the requested information is not provided, the costs expended bring no return. *Marais* analogizes the issue to a situation where a customer hires a painter to paint a fence.   If the customer gets what the customer pays for, the cost is simply a cost.  But if the painter never paints the fence, but instead absconds with the money, the costs represent loss occurring as a result of a wrongful act.  Thus, the costs associating with painting the fence in the second example become damages.  *Id.* at 727.

Of course, Plaintiff did not bring this case to recover the small amount of money associated with the costs of preparing and sending her Request for Information.  Instead, she brought this case to vindicate important federal rights arising from the recently amended and implemented RESPA provisions. "Congress intended RESPA to serve a consumer protection purpose." *Medrano v. Flagstar Bank FSB*,  704 F.3d 661, 665-666 (9th Cir. 2012).  "Accordingly, RESPA's provisions relating to loan servicing procedures should be 'construed liberally' to serve the statute's remedial purpose." *Id*.  Here, Bank of America asks this Court to impose a heightened pleading standard relating to damages, and even to reject specific and detailed allegations that other courts have found to be sufficient.  Plaintiff respectfully submits however

that would be altogether inconsistent with RESPA's consumer protection purposes.  As the jury instruction approved in *McCollough* notes, "[t]here is no fixed standard or measure for the emotional distress damages she sustained.  However, allowing the intangible nature of emotional distress damages to preclude her form pursuing relief based upon Bank of America's readily provable RESPA violation would undermine RESPA's consumer protection purpose, especially where she has *also* alleged readily quantifiable pecuniary loss as well.

         Respectfully submitted,


         THE LAW OFFICES OF JEFFREY N. GOLANT, P.A
         1000 W. McNAB RD. STE. 150
         POMPANO BEACH, FL 33069
         Phone:  (954) 942-5270
         Fax: (954) 942-5272
         Email:  jgolant@jeffreygolantlaw.com
         By: **/S/ JEFFREY N. GOLANT ESQ.**
         Fla. Bar. No. 0707732
         Co-Counsel for Plaintiff Elina Zaychick

         Jessica L. Kerr, Esq.
         Jessica L. Kerr, P.A. 401 E Las Olas Blvd Ste 130
         Fort Lauderdale, FL 33301-2477
         Fla Bar. No.  92810
         Email: jessicakerresquire@gmail.com
         Co-counsel for Plaintiffs Maria Mantilla and John Lage

## CERTIFICATE OF SERVICE

I hereby certify that on June 3rd, 2015 I electronically filed the foregoing document with the Clerk of Court using CM/ECF and I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

Service List:

Arliel Acevedo Esq.
LIEBLER, GONZALEZ &PORTUONDO
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone: (305) 379-0400
Fax: (305) 379-9626
Florida Bar No. 946001
E-mail: aa@lgplaw.com
Attorney for Defendant Bank of America

**/S/ Jeffrey Golant**