UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:15-CV-80336-ROSENBERG/BRANNON

ELINA ZAYCHICK,

    Plaintiff,

v.

BANK OF AMERICA, N.A.,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S SECOND MOTION TO DISMISS**

This matter is before the Court on Defendant's Second Motion to Dismiss [DE 27]. Plaintiff filed a Response to the Motion. [DE 30]. Defendant failed to file a Reply; the time period for a reply has passed. This matter is adequately briefed for the Court's disposition. The Court has reviewed the documents in the case file and is fully advised in the premises. For the reasons set forth below, Defendant's Motion is granted and Plaintiff's Amended Complaint is dismissed with prejudice on various grounds, including the Court's lack of subject matter jurisdiction over Plaintiff's claim.

### I.    BACKGROUND

Plaintiff is a former homeowner whose home mortgage was serviced by Defendant. Plaintiff defaulted on her loan and foreclosure proceedings were initiated in March of 2012. In January of 2014 Plaintiff filed a loss-mitigation application in an attempt to save her home. Her application was denied on May 9, 2014 because she "did not show sufficient evidence of impending hardship." Plaintiff appealed the denial. Plaintiff's appeal was unsuccessful.

Thereafter, a final judgment of foreclosure was entered in state court and Plaintiff's home was sold at auction on October 3, 2014. Eviction proceedings were initiated against Plaintiff. Eviction proceedings remain ongoing. After Plaintiff's home was sold at auction, Plaintiff (through counsel) sent a letter on November 3, 2014 to Defendant seeking more specific information as to why her loss-mitigation application had been denied in May of 2014. Defendant responded; however, Plaintiff asserts that Defendant's response did not satisfy Defendant's obligations under the Real Estate Settlement Procedures Act. This lawsuit followed.

On July 27, 2015, the Court dismissed Plaintiff's Complaint without prejudice due to Plaintiff's failure to plausibly plead a causal connection between her alleged damages and Defendant's alleged wrongdoing. Plaintiff filed an Amended Complaint and Defendant's Second Motion to Dismiss is the matter presently before the Court.

## II.   LEGAL STANDARD

In considering a motion to dismiss, the Court must accept the allegations in a complaint as true and construe them in a light most favorable to the plaintiffs. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321 (11th Cir. 2012). At the pleading stage, the Complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). All that is required is that there are "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

## III.   ANALYSIS AND DISCUSSION

Plaintiff has brought a single claim against Defendant under the Real Estate Settlement Procedures Act, RESPA. *See* 12 U.S.C § 2605. This claim is premised upon three separate grounds. The first two grounds pertain to "Regulation X" requirements to consider loss-mitigation

applications, which is codified in pertinent part at 12 C.F.R. § 1024.41 and which is enforced through RESPA.  Plaintiff's third and final ground is based upon a mortgage servicer's Regulation X obligations to provide information, which are also enforced through RESPA.  *See* 12 C.F.R. § 1024.36.  The Court first addresses Plaintiff's grounds premised upon Regulation X requirements to consider loss-mitigation applications.

### 1. Plaintiff's RESPA Claim Premised upon 12 C.F.R. § 1024.41

Regulation X allows for borrowers to submit loss-mitigation applications prior to a final foreclosure of the borrower's home.  Regulation X requires a loan servicer, upon receipt of a complete loss-mitigation application,[1] to: "Evaluate the borrower for all loss mitigation options available to the borrower," and "If a borrower's complete loss-mitigation application is denied . . . a servicer shall state in the notice sent to the borrower . . . the specific reason or reasons [for the denial]."  12 C.F.R. §§ 1024.41(c)(1)(i), (d).  Plaintiff alleges that Defendant violated both of these requirements: that Defendant did not evaluate Plaintiff for all loss-mitigation options available to Plaintiff and that, upon denial, Defendant did not provide specific reasons for its denial.  The Court lacks subject matter jurisdiction over both of these allegations.

Federal review of state-court judgments may only occur in the United States Supreme Court.  28 U.S.C. § 1257(a); *see also Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305 (S.D. Fla. 2011).  Therefore, this Court lacks jurisdiction to review final state-court judgments.  The *Rooker-Feldman* doctrine encapsulates and delineates the rule that district courts may not review final state-court judgments, and the doctrine precludes review of claims that are "inextricably

---

[1] For an unknown reason, Plaintiff has persisted in alleging a loss-mitigation application was submitted, instead of alleging that a *complete* loss-mitigation application was submitted.  The Court construes this lack of specificity in Plaintiff's favor and assumes that Plaintiff submitted a complete loss-mitigation application to Defendant, which is an inference strengthened by the fact that Defendant's rejection of the application contained no references to the application being denied due to a lack of completeness.  *See* DE 26-1.

intertwined" with state judgments. *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). However, where a party did not have a "reasonable opportunity to raise [a] federal claim in state proceedings" the doctrine does not apply. *Id.* In such a situation, a plaintiff's claims are not considered to be inextricably intertwined with the state court judgment. *See Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996).

Notably, the Eleventh Circuit and many district courts have applied the *Rooker-Feldman* doctrine to dismiss actions where a plaintiff was seeking, in reality, to challenge state-court foreclosure judgments. *See, e.g.*, *Parker v. Potter,* 368 F. App'x 945, 947-48 (11th Cir. 2010) (rejecting under *Rooker-Feldman* a federal claim under the Truth in Lending Act that sought rescission of a state foreclosure judgment); *Velardo v. Fremont Inv. & Loan,* 298 F. App'x 890, 892-93 (11th Cir. 2008) (holding that appellants' federal TILA claims were inextricably intertwined with a state-court foreclosure judgment and thus barred by *Rooker-Feldman*); *Harper v. Chase Manhattan Bank,* 138 F. App'x 130, 132-33 (11th Cir. 2005) (dismissing federal TILA, Fair Debt Collection Practices Act, and Equal Credit Opportunity Act claims under *Rooker-Feldman* because they were inextricably intertwined with a state-court foreclosure proceeding); *Aboyade Cole Bey v. Bank Atl.,* No. 09-CV-1572, 2010 WL 3069102, at *2 (M.D. Fla. 2010) (finding the court had no jurisdiction to hear plaintiff's case under *Rooker-Feldman* because the case was, "at its core," an attempt to revisit a state-court foreclosure judgment); *Distant v. Bayview Loan Servicing, LLC*, No. 09-CV-1572, 2010 WL 1249129, at *3 (S.D. Fla. 2010) ("Although plead as conspiracy claims . . ., Plaintiff is clearly asking this Court to invalidate the state court action by ruling that the state court foreclosure judgment is somehow void. Under the *Rooker-Feldman* doctrine, [defendant] is correct that this Court lacks subject matter

4

jurisdiction, as Plaintiff seeks a *de facto* appeal of a previously litigated state court matter."); *Figuero*, 766 F. Supp. at 1320 (collecting and discussing the cases cited above).

Here, Plaintiff's claims are inextricably intertwined with her final state-court foreclosure judgment. By Plaintiff's own admission as alleged in her complaint, Plaintiff brought the issue of Defendant's review of her loss-mitigation application to the attention of the state court during her foreclosure proceedings. More specifically, Plaintiff alleges that her loss-mitigation application to Defendant (which was rejected) did not consider her for a HAMP loss-mitigation program as follows:

> In order to maximize the likelihood that she would receive a HAMP modification, Borrower continued to employ and pay a law firm known as "Litigation Law" to assist her with her loss mitigation application and represent her in the foreclosure lawsuit, even though she had entered into a stipulation for a consent judgment. Importantly however, **the stipulation noted that there was a pending loss mitigation application, and contemplated that the sale would not take place for 150 days, thereby allowing ample time to complete the loss mitigation review process**.
>
> After the May 17th correspondence (and therefore after the May 9th denial letter) Bank of America repeatedly requested documentation supporting Borrower's loss mitigation application. Borrower promptly complied each time. Borrower continued to employ Litigation Law, in large part to assist her with the loss mitigation process and in complying with Bank of America's related requests.
>
> On October 22nd, 2014, an attorney associated with Litigation Law and representing Borrower **appeared at hearing** [sic] **before the state court asking that the sale be cancelled because Borrower's loss mitigation application was pending**. Counsel for the foreclosure Plaintiff (who was retained by Bank of America and who reported to Bank of America) opposed that request and represented that Borrower's application had been denied during the month of May.

DE 26 ¶¶ 20-22 (emphasis added). Thus, pursuant to Plaintiff's allegations: (i) there was a stipulation for consent judgment in her state court foreclosure proceeding, (ii) that stipulation contained a clause pertaining to her loss-mitigation application with Defendant, (iii) Plaintiff believed Defendant essentially was not complying with that clause, (iv) Plaintiff sought relief from the state court to have the foreclosure sale cancelled, and (v) the state court denied Plaintiff relief.

5

It is Plaintiff's contention that foreclosure was wrongful and that the state court erred by not cancelling the scheduled foreclosure sale. All of the evidence upon which Plaintiff now relies to allege that she was not considered for a HAMP loan modification was available to Plaintiff during the pendency of her foreclosure proceedings.[2] *See* DE 26 ¶¶ 15, 18. Plaintiff had the opportunity to litigate her claims in state court while her foreclosure case was pending, both with respect to her allegation that Defendant did not consider her for HAMP modification and her allegation that Defendant provided insufficient specificity for its denial. Both of these issues were either before the state court directly or are inextricably intertwined with the state court's entry of final judgment of foreclosure.

There are no procedural bars to the application of the *Rooker-Feldman* doctrine to this case as this case was filed subsequent to Plaintiff's final state court judgment. *See Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Were judgment to be entered in this case in favor of Plaintiff, it would necessarily follow that the state court foreclosure was in error and, as a result, this Court cannot grant Plaintiff her requested relief without disturbing the Florida foreclosure judgment. *See, e.g.*, *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150 (E.D.N.Y. 2010). It is for state appellate courts and the United States Supreme Court to tell state courts that they are wrong. *See Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1324 (S.D. Fla. 2011). To the extent Plaintiff seeks monetary damages and does not seek to overturn the state court foreclosure judgment, this has no bearing on the Court's decision as damages would only be available where there was a wrongful foreclosure. *See, e.g.*, *Rene v. Citibank*, 32 F. Supp. 2d 539, 543 (E.D.N.Y.

---

[2] To the extent it could be inferred from Plaintiff's allegations that Defendant defrauded the state court by falsely representing to the court that Plaintiff's loss-mitigation application was denied (as inherent in such a representation would be that it was denied lawfully after considering Plaintiff for all available programs), that too is a matter directly related to the validity of the state court's entry of final judgment.

6

1999).  Finally, the Court finds that Plaintiff did have a reasonable opportunity to raise her claims in her state court proceeding.  *See Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009).

### 2. Plaintiff's RESPA Claim Premised on 12 C.F.R. § 1024.36

Plaintiff has also brought her RESPA claim on the contention that after her home was sold at foreclosure, she sent a written request for information to Defendant for information pertaining to her loss-mitigation application.  Plaintiff takes issue with a request she made for "all loss mitigation options that the owner/investor/holder is participating in."  DE 26 ¶ 29.  Plaintiff alleges that Defendant's response to this inquiry violated RESPA and Regulation X because Defendant's response did not "provide[] any information responsive to the specific request about the owner/investor/holder's loss-mitigation alternatives."  *Id.* ¶ 30.  Plaintiff's request for information lacked clarity.

Plaintiff's request was phrased in the present tense:

> 6. All loss mitigation options that the owner/investor/holder is participating in.

DE 26-3.  At the time this request was made, November 3, 2014, Plaintiff's home had been sold at auction and final judgment of foreclosure had been entered.  *See id*; DE 26 ¶ 8.  Therefore, to the extent Plaintiff sought information on the loss-mitigation programs she had been considered for in the past, this is not what the request asked for—the request was phrased in the present tense.  It is therefore unsurprising that Defendant responded to her request by informing her that the real property had been sold on October 3, 2015.  *See* DE 26-5.  Moreover, Regulation X permits a servicer to refuse to provide information if the information sought is confidential or privileged information.  12 C.F.R. § 1024.36(f)(1)(ii).  Here, the letter proffered by Plaintiff contains a signature line for her to authorize the disclosure of her personal information, *but the signature line*

7

*was left blank*. DE 26-3. It is also unsurprising, and indeed it was proper, that Defendant's response to the request for information was to require Plaintiff to authorize the disclosure of her private information to third parties. DE 26-5. Finally, Defendant was not required to anticipate that Plaintiff sought information other than what Plaintiff actually asked for. *See Whittaker v. Wells Fargo Bank, N.A.*, No. 12-CV-98, 2014 WL 5426497, at *8 (M.D. Fla. Oct. 23, 2014) ("[RESPA] does not require the servicer to provide the resolution or the explanation desired by the borrower.").

To the extent that Plaintiff sought information on the loss-mitigation programs that the owner of Plaintiff's note offered in the abstract during the time period Plaintiff was the borrower of record, this is not what the request asked for. *See id.* ("[RESPA] does not require the servicer to provide the resolution or the explanation desired by the borrower."). The request for information was phrased in the present tense and Plaintiff's arguments on this point therefore lack relevance. Alternatively, if Plaintiff sought this type of information (in the abstract and without connection to her mortgage loan) this is not the type of request that Regulation X authorizes, as more fully discussed below.

To the extent Plaintiff's request for information is interpreted literally, Plaintiff sought information as to what loss-mitigation programs, as of November 3, 2014, the owner of her (former) home was offering *to other borrowers in the present*. Plaintiff has provided no authority that she was entitled to this information, nor has Plaintiff provided authority that such a request falls within the scope of a proper Regulation X request for information. By contrast, the scope of Regulation X limits Plaintiff's requests for information to requests that have some bearing to her (in this case former) mortgage loan:

> Information request. A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting **with respect to the borrower's mortgage loan**.

12 C.F.R. § 1024.36(a) (emphasis added). Therefore, to the extent Plaintiff's request for information is interpreted literally, Plaintiff's request for information was an improper Regulation X request because it did not concern the borrower's mortgage loan—it sought abstract information on programs offered to other borrowers, in the present, by the new owner of her home.

In the alternative, Plaintiff's RESPA claim premised on her request for information must fail because of a lack of damages. Plaintiff again argues to this Court that the costs incurred in connection with a RESPA request may serve as RESPA damages. The Court reiterates that the costs incurred while preparing a written request for information from a servicer cannot serve as a basis for damages because, at the time those expenses are incurred, there has been no RESPA violation. *See Steele v. Quantum Serv. Corp.*, 12-CV-2897, 2013 WL 3196544 (N.D. Tex. June 25, 2013). To hold otherwise would mean that every RESPA claim has damages built-in to the claim. *See Lal v. Amer. Home Serv., Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010). Courts have so held because the wording of the relevant RESPA regulation only provides for "actual damages to the borrower **as a result of** the failure" to comply with RESPA. 12 U.S.C. § 2605(f)(1)(A) (emphasis added). To the extent Plaintiff now argues that her request for information was a result of Defendant's earlier violation of RESPA by virtue of its failure to consider her for all possible loss-mitigation alternatives, this is impermissible for all of the reasons set forth above—the *Rooker-Feldman* doctrine precludes the Court's consideration of those matters.

To the extent Plaintiff alleges emotional damages[3] that stemmed from Defendant's response to her request for information, this too must fail. In a prior order, this Court detailed its concerns that Plaintiff had alleged emotional damages in a conclusory fashion that did not allow the Court to plausibly infer a causal connection between Plaintiff's emotional damages and Defendant's alleged RESPA violation. DE 25. Although Plaintiff has now provided greater clarity with respect to her emotional damages in connection with her RESPA counts premised on loss-mitigation allegations, Plaintiff has not provided greater clarity with respect to her emotional damages premised upon her request for information. Notwithstanding Plaintiff's repetitive protestations to the contrary, the Court is not applying a heightened pleading standard on these matters. The Court applies the same *Iqbal* standard to Plaintiff's allegations that the Court applies to every litigant. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff has not pled any plausible causal connection between her alleged emotional damages and the RESPA violations of Defendant in connection with her written request for information. Instead, the only plausible inference that may be derived from Plaintiff's emotional damages associated with "not knowing" what loss-mitigation plans Defendant offered, is that Plaintiff's emotional damages stem from not knowing whether her foreclosure would have been prevented, had Defendant complied with applicable law. This is equivalent to emotional damages stemming from the loss of her home. Those damages are not traceable to Defendant's alleged RESPA violation pertaining to Plaintiff's request for information and are instead traceable to the final state foreclosure judgment that this

---

[3] Plaintiff also alleges damages associated with relocation, however, Plaintiff has alleged that she has contested eviction proceedings for one year and continues to occupy her home. DE 26 ¶ 8. Plaintiff has also failed to link, in any way, future damages associated with moving (which clearly is a result of her foreclosure) with Defendant's failure to provide greater information on its internal loan-review processes.

Court may not review.[4]  Furthermore, Plaintiff's allegations on the issue of damages plainly demonstrate how Plaintiff's emotional damages are inextricably intertwined with the state court's entry of final judgment:

> Bank of America's failure to consider Borrower for a HAMP modification has caused borrower to sustain damages. If Borrower were qualified for a HAMP modification, Borrower would have avoided the emotional distress associated with losing her home, as well as the costs of relocation. Alternatively, even if she would not have qualified for a HAMP modification, Borrower went to substantial effort, and incurred expense including but not limited to expenses associated with professional assistance with her HAMP application, in order to be considered for a HAMP modification. As a result of Bank of America's failure to consider her for the HAMP program, Borrower's efforts and expenditures relating to her HAMP application were wasted.
>
> . . .
>
> Bank of America's failure to provide Borrower with the information that she requested under 12 C.F.R § 1024.36, has caused her to sustain actual damages, including but not limited to the costs associated with preparing and sending her Request for Information, and emotional distress.

DE 26 ¶¶ 26, 31.

For all of the foregoing reasons, Defendant's Second Motion to Dismiss is granted and Plaintiff's Amended Complaint is dismissed.  Plaintiff has had ample opportunity to amend her pleading and litigate this case.  Further amendments would be futile.  *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).  Accordingly, the Court's dismissal is with prejudice.

### IV.   CONCLUSIONS AND RULING

It is therefore **ORDERED AND ADJUDGED** that Defendant's Second Motion to Dismiss [DE 27] is **GRANTED**, that Plaintiff's Amended Complaint is **DISMISSED WITH**

---

[4] Because the Court finds that Plaintiff's RESPA claim is substantively deficient, the Court declines to hypothetically consider whether Plaintiff has properly alleged statutory damages by referencing non-parties, in other cases that have been closed for various reasons, including settlement; Plaintiff has failed to brief that issue with legal authority.

**PREJUDCE**, that the Clerk of the Court is directed to **CLOSE THIS CASE**, and that all other pending motions are **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 12th day of November, 2015.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record